(A.R.D. 133)

UNITED STATES *v.* PLYWOOD & DOOR MANUFACTURERS CORPORATION

Entry No. 773656, etc.

Second Division, Appellate Term

(Decided June 7, 1961)

*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.
*James Wilson Young* (*Richard Van Steenburgh* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This is an application for review of the decision and judgment of the trial court covering appeals for reappraisement listed in schedule "A," attached hereto and made a part hereof, *Plywood & Door Manufacturers Corporation* v. *United States*, 44 Cust. Ct. 745, Reap. Dec. 9723, incorporating the language of the memorandum reported in *Same* v. *Same*, 44 Cust. Ct. 541, Reap. Dec. 9581.

The merchandise involved herein consists of birch plywood, exported from Finland during the period between June 1954 and April 1955. In reappraisement appeals 280813–A and 280824–A, the plywood consisted of panels with sizes from 48 x 30 inches and larger in various thicknesses. The trial court, for convenience sake, referred to these cases as the "panel" cases, which designation we shall also adopt. The remaining two appeals, reappraisements 291744–A and 291746–A, cover plywood in sizes 76 x 4¾ x ¹³⁄₁₆ and 76 x 5 x ¹³⁄₁₆ inches. These cases, for convenience sake, will be referred to as the "bedrail" cases, as they were by the trial court.

The plywood in the "panel" cases was appraised on the basis of foreign value, pursuant to the provisions of section 402(c), Tariff Act of 1930, as amended. The so-called "bedrail" plywood covered by the appeals for reappraisement was appraised on the basis of export value, as provided for in section 402(d) of said act. Appellee contends that the correct basis of appraisement in each case is the export value and that said value should be based upon a pricelist designated by the code word, "AMFIN," which pricelist was prepared by an association of plywood manufacturers in Finland and adhered to by its members.

The merchandise in the "bedrail" cases of the quality BB/WG in reappraisement 291746–A was entered and invoiced at $231.75 per thousand square feet, less charges, as invoiced, for inland freight, loading at port of shipment, ocean freight, insurance, and consular fee. The merchandise covered by reappraisement 291744–A was invoiced as BJ/WG quality and was entered and invoiced at $266 per thousand square feet, less charges, as invoiced, as indicated, *supra*. In each instance, the merchandise was appraised at $325 per thousand square feet, less the following charges: Loading at port of shipment, ocean freight, insurance, and consular fee. The inland freight charges do not appear to be contested and, accordingly, will not be considered.

The evidence herein with respect to the merchandise designated as "bedrails" in the two appeals for reappraisement indicates that the merchandise was cut from plywood panels of the press size of 76 x 50 x $13/_{16}$ inches in the quality BJ/WG in reappraisement 291744–A, and BB/WG in reappraisement 291746–A. The record also establishes that the cutting and sawing down to the sizes involved herein were accomplished at no extra cost. Accordingly, the importer herein contends that the correct export value thereof is the value applicable to the plywood in size 76 x 50 x $13/_{16}$ inches, in accordance with the "AMFIN" pricelist, hereinbefore referred to, of the grade, size, and quality of said plywood.

The record herein establishes that, at the time of exportation of the involved birch plywood, the manufacturers in Finland offered the various grades of faces or surfaces ranging from the highest grade, bearing the designation "A," down to the poorest grade, bearing the designation "WG"; that plywood usually carried two designations, the first being that of the quality of the face or surface, and the second being the quality of the back face or surface. Accordingly, in the "bedrail" cases, the qualities BJ/WG and BB/WG indicate that the front face quality in the respective cases are BJ and BB and that the back face was of WG quality.

An examination of the basic prices quoted in the "AMFIN" pricelist indicates that said pricelist is related to plywood in the press size of 60 x 48 inches, with certain additions depending upon the grade

ordered for sizes in excess of 60 x 48 inches, and deductions of $2.50 per thousand square feet, if the back grade was that of WG, or $5 per thousand square feet, if both sides were of WG quality. For convenience sake, since both parties offered copies of the "AMFIN" pricelist, we are setting forth said list in full below:

CODEWORD "AMFIN"

PRICE LIST FOR FINNISH BIRCH PLYWOOD IN US. DOLLARS PER 1,000 SQ. FT. CIF EASTERN, GULF AND WEST COAST PORTS.

Basic prices for standard size 60 x 48"

| Thickness | S2S (BB) | G1S (BJ/BB) | G2S (BJ/BJ) | Selected G1S (AJ/BB) | Selected G2S (AJ/AJ) |
|---|---|---|---|---|---|
| 1/8" | 51.00 | 66.00 | 71.00 | 81.00 | 106.00 |
| 5/32" | 55.75 | 72.25 | 77.25 | 87.25 | 112.25 |
| 3/16" | 65.50 | 83.50 | 88.50 | 98.50 | 123.50 |
| 1/4" | 85.25 | 106.00 | 111.00 | 121.00 | 146.00 |
| 5/16" | 102.50 | 126.00 | 131.00 | 141.00 | 166.00 |
| 3/8" | 122.25 | 148.50 | 153.50 | 163.50 | 188.50 |
| 1/2" | 159.00 | 186.00 | 191.00 | 201.00 | 226.00 |
| 5/8" | 181.50 | 226.00 | 231.00 | 241.00 | 266.00 |
| 3/4" | 212.25 | 261.00 | 266.00 | 276.00 | 301.00 |
| 13/16" | 226.75 | 278.00 | 283.00 | 293.00 | 318.00 |
| 1" | 273.00 | 331.00 | 336.00 | 346.00 | 371.00 |

Quality reductions:

For WG back instead of BB deduct $2.50 per 1,000 sq. ft.
For WG both sides deduct from price of BB $5.00 per 1,000 sq. ft.

Size increases and reductions:

For sizes from 72 x 50", 50 x 84" and 50 x 96" presses add $7.50 per 1,000 sq. ft. in S2S (BB) grade and lower grades.

For sizes from 72 x 50", 50 x 84" and 50 x 96" presses add $10.00 per 1,000 sq. ft. in G1S (BJ/BB) and better grades.

For sizes from 50 x 50" press deduct $5.00 per 1,000 sq. ft. in all grades.

The above prices do not include agents commission.

5.3.1953

Based upon the above pricelist, a panel of plywood 76 x 50 x $13/16$ inches in the BB quality is $226.75. Deducting $2.50 for the WG back, we arrive at a price of $224.25. We must, however, add, for extra size, the sum of $7.50, which results in the BB/WG c.i.f. price of $231.75 per thousand square feet, as invoiced. With respect to the same size in BJ/WG quality, the "AMFIN" pricelist indicates the basic price to be $278 per thousand square feet, from which $2.50 must be deducted for the WG back, resulting in a figure of $275.50 per thousand square feet, to which $10 per thousand square feet must be added for extra size in that quality, which results in an "AMFIN" price of $285.50 per thousand square feet c.i.f.

The Government contends that the merchandise came in various qualities, which may have occurred by virtue of the cutting of the bigger panel into the "bedrail" sizes. It is obvious that taking a large panel of plywood and cutting it into widths of $4\frac{3}{4}$ or 5 inches might result in some of the "bedrails" having no defects, while some may have had more than one defect. The Government's position, therefore, is that the merchandise, as imported, consisted of some panels of higher quality than the BJ/WG quality which is the higher of the two imported herein. The record herein, however, established that the so-called "bedrails" were cut from the quality designated on the invoices.

We are of the opinion that the panels from which said "bedrails" were cut for purposes of tariff valuation are similar merchandise to the "bedrails" imported herein. Since the so-called "bedrails" were appraised on the basis of export value, and it is admitted by appellant in finding No. 3 of its proposed findings of fact that export value is the proper basis, we find that export value is the proper basis of appraisement for this merchandise. Accordingly, the "bedrails" should be found to have the c.i.f. value as set forth in the "AMFIN" pricelist for plywood panels of 76 x 50 x $1\frac{3}{16}$ inches of the quality designated on the invoices, less the nondutiable charges found by the appraiser, i.e., as invoiced, except for inland freight, as found by the trial court.

With respect to the panels of plywood involved in reappraisements 280813–A and 280824–A, a more complex problem is presented. We agree with the finding of the trial court that such or similar birch plywood was not freely offered for sale in Finland for home consumption, since the plywood manufactured for sale in Finland was made in millimeter thicknesses and not in fractions of an inch, and was put together with a casein albumen glue, while that shipped to the United States required a resin glue, due to the particular requirements and heating facilities of this country. The necessity for the difference in glue and the consequential difference in any moisture content, as well as the difference in the thickness of the veneer utilized in the two classes of merchandise and the difference in the thickness of the plywood, are well established in the record. The record also establishes the incapability of substitution by virtue of a lack of utilitarian interchangeability and not mere preference. This difference clearly distinguishes the case of the *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619, cited by appellant. We are also in agreement with the findings of the trial court that certain charges are properly subject to deduction when the freely offered price is on a c.i.f. basis. The trial court, with respect to this matter, made the following comments which we deem pertinent herein:

The prices shown on the "AMFIN" pricelist are in dollars per thousand square feet, c.i.f. American ports, and it appears that, so far as offer and sale of such plywood in Finland for exportation to the United States is concerned, the c.i.f.

basis was the only basis upon which such merchandise was freely offered and sold.

I am of the opinion that the record establishes that—

> * * * such * * * merchandise [was] freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States * * *.

but the question presented is whether the prices indicated on the said pricelist are the prices at which such merchandise was so offered as above indicated.

If one were to follow literally some expressions of our appellate court in the case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, one might come to the conclusion that, inasmuch as the *only* price at which the merchandise was freely offered for sale in Finland for exportation to the United States was a c.i.f. American ports price, the c.i.f. price, without any deductions, would represent export value for duty purposes. In that case, our appellate court said:

> In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f.o.b. Bremen basis. There is no showing that the goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and, as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment*, and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

Similarly, in the case at bar, it is a fact that the freely offered price to all purchasers for the merchandise was on a c.i.f. American port basis. There was no showing that the goods could be purchased on any other basis. The unit prices included every charge, including loading charges at the port of shipment, ocean freight, insurance, and consular fee, at the time of purchase in Finland. If the reasoning of the appellant in the *Straub* case which was quoted by our appellate court was there valid, it would seem that it would be equally valid here, that is to say, that the loading charges, ocean freight, insurance, and consular fee are "incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. [They are] inseparable therefrom and [are] a charge *in* the principal market *at or prior to the time of shipment*, and [do] *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

However, I note that in its opinion in the *Straub* case, *supra*, our appellate court cited the case of *John A. Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, and quoted with approval an excerpt therefrom which shows that the merchandise there involved was offered for sale in Finland for exportation to the United States *only* on a c.i.f. American port basis. The trial judge of this court in that case held that the correct export value was the c.i.f. price, *less* the charges for consular fee, forwarding and lading, marine and war risk insurance, and ocean freight, as invoiced and entered, saying, among other things:

> It would appear from this record that the only place in Finland where such or similar merchandise was freely offered for sale for exportation to

all purchasers was the city of Helsinki, and, by agreement of the parties, the price in such market was United States dollars 10.20 per 100 pounds, net, packed, c.i.f. Philadelphia, Pa. Included in said price were, of course, certain charges, such as forwarding and lading fees, consular fee, marine and war risk insurance, and ocean freight, which, because they ordinarily accrue subsequent to the time when the merchandise is in the principal market, in condition, packed ready for shipment to the United States, are not, and, since the act of 1890, have never been, considered as dutiable items. *The John Shillito Company* v. *United States,* 5 Treas. Dec. 555, T.D. 23851; *United States* v. *Samuel Shapiro & Co. et al.,* 65 Treas. Dec. 1650, Reap. Dec. 3268; *International Commercial Co., Inc. and Armour & Co.* v. *United States,* 26 Cust. Ct. 607, Reap. Dec. 7980, affirmed 28 Cust. Ct. 629, Reap. Dec. 8112.

Taking note that our appellate court obviously approved of the foregoing reasoning, and of the fact that although counsel for the plaintiff cited the *Steer* case, *supra,* in its brief as authority for the deduction of the charges mentioned above, counsel for the defendant made no effort to distinguish the same, I am of the opinion that it represents the present law on the subject and is applicable to the situation in the case at bar. [All italics quoted.]

The record, however, does establish that there existed between the exporter and the importer herein an exclusive agreement for the purchase of said merchandise. The affidavit, plaintiff's exhibit 4, also establishes that the so-called "bedrails" were sold exclusively to the importer herein. Accordingly, there being a restriction as to such merchandise in both the "panel" and "bedrail" cases, such merchandise was not freely offered for sale for export to the United States. We are of the opinion, however, that the record does establish that other manufacturers of similar merchandise did freely offer their merchandise for sale for export to the United States, based upon the "AMFIN" pricelist.

An examination of the invoices contained herein establishes that, in a number of instances, the invoiced price does not conform with the price for the particular size, quality, and thickness of plywood set forth on said "AMFIN" pricelist. This, of course, takes into consideration the various additions and deductions required by said pricelist. Particular attention should be given to certain plywood designated as "A/BB ¾″" in various sizes covered by reappraisement 280824–A. It is to be noted that the "AMFIN" pricelist does not contain nor provide for "A" front face quality plywood. Therefore, this court is unable to ascertain the price for said "A" quality.

In view of the foregoing, we are of the opinion that this matter should be remanded to a single judge for the purpose of obtaining evidence relative to the actual mathematizing of all of the merchandise covered by the four appeals herein, based upon the "AMFIN" pricelist, and such evidence as is necessary should be presented with respect to the said plywood designated as "A" face quality.

To the extent indicated and for the foregoing reasons, the decision and judgment of the trial court are hereby modified, and the case is remanded to the trial court for determination of the export value of similar merchandise. Judgment will be rendered accordingly.