(R.D. 11448)

PLYWOOD & DOOR NORTHERN CORPORATION *v.* UNITED STATES

Entry No. N–112.

(Decided January 2, 1968)

*Richard Van Steenburgh* for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Bernard J. Babb* and *Brian S. Goldstein,* trial attorneys), for the defendant.

WILSON, Judge: The merchandise under consideration consists of birch plywood of differing thicknesses and sizes exported from Hanko, Finland, on June 24, 1965, by the producer, Oy Wilh. Schauman Ab, hereafter referred to as Schauman of Helsinki, Finland. "Oy and Ab" stand for incorporated (R.4).

Counsel agree that birch plywood appears on the final list published in 93 Treas. Dec. 14, T.D. 54521, and that export value as defined in section 402a(d) of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, is the proper basis for appraisement.

The imported birch plywood was appraised at invoice unit values net, less invoiced ocean freight of $792.22, and insurance of $28.13, packed. Entry was made by the importer at the invoiced total of the unit values, less invoiced ocean freight and insurance, and less invoiced loading charges at port of shipment, amounting to $61.13. Plaintiff claims that the said loading charges included in the appraisal are nondutiable and that it is also entitled to a cash discount of 5 percent. Defendant contends that the loading charges are dutiable and that plaintiff is not entitled to a 5 percent cash discount.

Plaintiff offered the official papers in evidence. The three invoices in this case show "Delivery Cif Norfolk," and terms 60 days. There is no mention of a 5 percent discount. Counsel for the importer stated, "We never buy cash; always on credit" (R.21).

The statute under consideration is section 402a(d) of the Tariff Act of 1930, as defined and renumbered in the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54521, which reads as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The evidence of the plaintiff consists of the testimony of two witnesses and certain documentary exhibits. Defendant offered the report of a senior customs representative dated August 10, 1966, at Frankfort, Germany. This report refers to an affidavit thereto attached. This affidavit was made by Viljo Snäll of Heinolan Faneritehdas, hereafter referred to as Heinola. The affidavit was sworn to on July 27, 1966, before the Vice Consul of the United States in Helsinki, Finland, and is marked exhibit AA.

Plaintiff's first witness, Heikki Jutila, testified that he is employed by Finnlines, Ltd., Steamship Company, a common carrier line of

traffic between Finnish ports and the United States. He had worked as the representative of that company in New York for 8½ years. Mr. Jutila said he had been in the shipping and export business for about 15 years, and was familiar with the rates that applied to birch plywood in 1965. All carriers in Finland, according to this witness, belong to a freight conference that sets the freight rates for birch plywood. He further testified that the cost of shipping a ton of plywood from the port of Helsinki to any North Atlantic coast port, from Hampton Roads to the northernmost part of the United States, by any member of the conference, did not vary during all of 1965.

Plaintiff's second witness, Mrs. Betty Seligman, testified that she has been employed by the United States Plywood Corporation as sales manager of Western World Imports for 12 years; that she does all of the importing of plywood for the Western World, and receives orders from the firm's branches and mills. The witness stated that she administers the whole operation for her company and is responsible for buying, selling, and pricings. Her duties have included direct import into the United States of birch plywood from Finland and other countries for 12 years. She has knowledge of the sizes, grades, prices, and other qualifications and specifications of the Finnish birch plywood imported for her firm. She has purchased birch plywood from Finland and from other United States importers of that product, namely, through Plywood & Door and through North American Plywood.

Mrs. Seligman also testified that exhibit "A" appended to plaintiff's exhibit 2, an affidavit by Viljo Snäll of Heinola, sworn to on February 10, 1966 (the same person who executed the affidavit, defendant's exhibit AA), is the association's official Finnish birch pricelist "meaning all suppliers are under this price list" (R. 31). It states the c.i.f. prices for the North Atlantic range referred to as "East" meaning from Boston to Norfolk. She stated that her firm purchased pursuant to that list dated September 12, 1964, until a change in pricelists dated October 1, 1965.

Mrs. Seligman produced several selected "spot checks" of records, marked exhibits 4 to 11, inclusive, of her firm showing individual transactions with Heinola. These records were kept in the ordinary course of business. They consist of orders from January 6, 1965, to September 14, 1965, and miscellaneous papers with reference to Heinola's shipments from March 17, 1965, to January 25, 1966. She stated that the prices in the pricelist are identical with her invoice prices. However, the pricelist does not show a discount of 5 percent while her invoices show a 5 percent discount for cash from the f.o.b. Finland price in all exhibits 4 to 11, inclusive. She stated that she always received the 5 percent discount on direct mill purchases and

there is no need to negotiate that as "It is an accepted fact." It is not based upon quantity other than to a minimum to cover a bill of lading which must be reached.

Under cross-examination, Mrs. Seligman testified that from January 1965 through September 1965 she only purchased directly from Heinola from Finland and has knowledge that other manufacturers of plywood in Finland sold plywood to the United States during this period.

Plaintiff's exhibit 1 is the affidavit of Uno E. Savola sworn to on February 4, 1966. Mr. Savola, who has been the managing director of Schauman for 15 years, alleges that he is familiar with the management and affairs of that corporation, and with the customs and practices prevailing in Finland in the manufacture and sale of birch plywood for home consumption and for export abroad. The affiant further stated that he keeps in personal contact with conditions in the plywood domestic and export markets and is familiar with every type, size, and grade of plywood that has been sold in the domestic market in Finland, as well as that sold for export to the United States. Mr. Savola stated that Schauman is a privately owned business corporation engaged in several types of business, one being the manufacture and sale of birch plywood for domestic consumption and for export to the United States and other countries. All birch plywood exported to the United States by Schauman on and after March 1, 1958, according to this affiant, was exported under terms of an exclusive agreement between four United States importers and eight Finnish manufacturers, Schauman being one of the eight signatories. A copy of this agreement is annexed to the affidavit, exhibit 1, as exhibit "A." It was signed by Gunnar Rudback as president of the four United States importers, viz: Plywood & Door Northern Corporation, Plywood & Door Southern Corporation, Plywood & Door Midwest Corporation, and Plywood & Door Western Corporation.

Said exhibit provides in part that the eight manufacturers shall confine all sales of their birch plywood manufactured to United States specifications for export to the United States solely to the four named importers, and that the said four importers will restrict their imports from Finland to the merchandise manufactured by the eight manufacturers. The agreement also provides that all exports will be made at the Plywood Manufacturers Association's current pricelist "FIN-PLY" dated January 11, 1958, or any other pricelist mutually agreed upon.

The affiant in exhibit 1 also alleges that said exclusive agreement was freely arrived at by the said eight independent Finnish manufacturers and exporters and that Schauman adhered to the terms thereof and has limited its exports of birch plywood to the United States to the

said four named importers; that on or about December 9, 1964, the Finnish Plywood Mills Association adopted a standard pricelist for birch plywood made especially for exportation to the United States. This list, a copy of which is annexed to exhibit 1 as exhibit "B" is designated "BIRCHPLY/65 EAST." Schauman sold for export to the United States at the prices stated therein, "effective from December 9, 1965 [sic] to September 27, 1965." At that time a new pricelist was adopted by said association. Other Finnish plywood manufacturers who were not parties to the exclusive agreement, exhibit "A" of exhibit 1, "have also been exporting birch plywood to the United States pursuant to the prices and under the same terms as are set forth in said Exhibit 'B'."

Copies of the three invoices herein involved are attached to exhibit 1 as exhibits "C–1," "C–2," and "C–3," the affiant alleging that they were made on c.i.f. Norfolk basis and included the cost of packing, the cost of shipment from the place of manufacture to the seaport in Finland, the loading or stevedoring charges at port of shipment, and the ocean freight and insurance, all of which Schauman paid. These three invoices reflect terms of 60 days. No discount is shown on these three invoices. The pricelist attached to exhibit 1 as exhibit "B" does *not* show a discount of 5 percent.

The affiant in exhibit 1 further states that the birch plywood manufactured in Finland for export to the United States differs from that manufactured for home consumption; that the birch plywood of the dimensions shown in exhibit "B" is made only for the United States market.

Exhibit 2, sworn to on February 10, 1966, is the affidavit of Viljo Snäll who for 35 years has been managing director of Heinola which manufactures birch plywood and hardboard. The affiant alleges that he is familiar with customs and practices prevailing in Finland in the manufacture and sale of birch plywood and hardboard for home consumption and for export abroad. The affiant avers that on December 9, 1964, the Finnish Plywood Mills Association adopted a standard pricelist, exhibit "A," which is the same as exhibit "B" attached to exhibit 1 heretofore mentioned. He alleges that his firm freely offered the various grades of plywood described therein for export to the United States at the stated prices until September 27, 1965, when a new pricelist was adopted.

The affiant further alleges that the birch plywood offered by his firm and others in Finland for export to the United States differs from that manufactured for sale in the home market, and that the plywood sold for home consumption cannot be used for export to the United States. The plywood sold for export to the United States is not sold for the home market. The affiant alleges that Heinola has

freely offered the type of plywood shown in the pricelist, exhibit "A" attached to exhibit 2, which is identical to the pricelist in exhibit "B" attached to exhibit 1, during the period from December 9, 1964, to September 27, 1965, for exportation to the United States pursuant to the prices in said exhibit "A." On such sales "a 5% discount was allowed to all purchasers for cash payment." The latter statement was subsequently *rectified* by an affidavit of Mr. Snäll, part of exhibit AA. See paragraph 13 of exhibit AA, quoted *infra*.

The affiant in exhibit 2 names two firms, namely, Robinson Export-Import Corporation of Alexandria, Va., and United States Plywood Corporation of New York, N.Y., to whom Heinola freely offered birch plywood when the prices in exhibit "A" of exhibit 2 were in effect. Attached are copies of invoices to these firms respectively dated July 28, 1965, and May 29, 1965, at prices in the pricelist, less "5% comm." and less "5% c.d.d. on fob value." As heretofore mentioned with respect to the pricelist in exhibit 1 and the pricelist in exhibit 2, which is an exact copy, they do *not* mention a 5 percent discount for cash. The prices shown are said to include all packing required to make the merchandise ready for shipment to the United States, plus the cost of shipping the merchandise from the factory to the principal market, plus the stevedoring or loading charges at the port of shipment and the ocean freight and insurance. The principal market is Helsinki, Finland.

Exhibit 3 is the affidavit of Carl-Ivar Niska, sworn to on December 1, 1965. He is the branch office manager of a stevedoring concern regularly engaged in the business of loading and unloading cargo from the hulls of vessels in the port of Hanko, Finland, which is the port of lading of the involved merchandise. He alleges that he has custody of the records of the firm regarding the charges made by his employer for loading and unloading ships, which he keeps in the ordinary course of business. He examined such records and attached copies of the three invoices covering the involved merchandise which his firm loaded during July 1965 from the pier at Hanko on board the vessel named in said invoices at the request of Schauman. He stated that the invoiced charges in said three invoices were actually incurred by Schauman, which consisted solely of stevedoring labor required to load the merchandise described in said invoices, and that the charges aggregate $61.13. Plaintiff claims that item as nondutiable. Defendant's exhibit AA consists of the report of a senior customs representative together with an affidavit of Viljo Snäll. The report refers to an interview on July 26, 1966, with Mr. Snäll, who is the same person that executed exhibit 2. That part of the report which consisted of the affidavit of Viljo Snäll, insofar as here pertinent, may be summarized as follows: Heinola and Viipurin have not and do not freely offer a cash discount

or other discount from the list prices to all United States purchasers. Certain firms, to wit, Robinson Export-Import Corporation, Alexandria, Va., and United States Plywood Corporation, New York, N. Y., did receive a 5 percent allowance from the list prices. This allowance, however, was not composed entirely of a discount for cash payment. Other United States importers did not receive any such discount. It appears from the affidavit, however, that in some instances a 2½ percent cash discount was allowed. Nevertheless, this was not a general practice. The affidavit also states that where specifications are disadvantageous to the exporter 5 percent or 10 percent might be added to the list price. It is also pointed out that Great Eastern Lumber Company and Georgia-Pacific Corporation received no discount of any sort. The affidavit states specifically that—

(13) The above statements concerning discounts or allowances from our list prices for birch plywood exported to the United States were made in order to rectify a previous erroneous statement I had made under item #9 of an affidavit taken from me in February of 1966 by Donald Doyle Casteel, Vice Counsel [sic], at the American Embassy, Helsinki, Finland, in which I stated: ". . . In addition, a 5% discount was allowed to all purchasers for cash payment."

Plaintiff's counsel requested "time to refute the statements contained therein [exhibit AA] or at least clarify them." He stated he was taken by surprise as "It conflicts directly with Exhibit 1" [evidently meaning exhibit 2]. The trial judge granted a continuance from October 11, 1966, to December 13, 1966. On the latter date, the case was submitted for decision *without* further evidence.

This case presents two questions for decision, namely, (1) whether the invoiced loading charges included in the unit c.i.f. Norfolk prices are or are not part of the value of the imported merchandise, and (2) whether the plaintiff is entitled to a deduction for cash discount of 5 percent.

As to the question concerning the loading charges, the record discloses that a standard pricelist marked "BIRCHPLY/65 EAST" of the Finnish Plywood Mills Association, identical copies of which are attached to exhibits 1 and 2, was adopted for birch plywood for exportation to the United States on or about December 9, 1964, and remained in effect to September 27, 1965, within which period the involved merchandise was exported. The prices are alleged to be c.i.f. Norfolk or other East United States seaports from Hampton Roads to the northernmost part of the United States. The stated prices were adhered to by Schauman and are so invoiced in the three invoices before the court. The prices include the cost of packing, the cost of shipment from the factory to the principal market, loading charges at the port of shipment, the ocean freight and insurance.

Counsel do not contend that there is any method of sale to the United States by Finnish exporters other than on a c.i.f. American port basis. The record supports that as factual. Such holding was made in the memorandum entitled *Plywood & Door Manufacturers Corporation* v. *United States*, 44 Cust. Ct. 541, Reap. Dec. 9581, which memorandum was incorporated in *Same* v. *Same*, 44 Cust. Ct. 745, Reap. Dec. 9723, modified and remanded on other grounds in *United States* v. *Plywood. & Door Manufacturers Corporation*, 46 Cust. Ct. 797, A.R.D. 133. In the first memorandum, the court stated, page 550:

* * * Plaintiff apparently concedes that the inland freight is a dutiable item, for its claim appears to be for a value based upon the invoiced prices, less charges, as invoiced, for loading at port of shipment, ocean freight, insurance, and consular fee.

The merchandise was appraised in each case at $325 per thousand square feet, less charges, as invoiced, for loading at port of shipment, ocean freight, insurance, and consular fee.

It is, therefore, apparent that the loading charges were *not* in issue in the cited case while they are in issue in the case at bar. For final opinion note decision on stipulation in *Plywood & Door Manufacturers Corporation* v. *United States*, 48 Cust. Ct. 526, Reap. Dec. 10151. In the cited case, as here, the inland freight, ocean freight, insurance and packing are not contested.

In the case of *John A. Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, cited by plaintiff, it was agreed that the merchandise was freely offered for sale for export to the United States at U.S. $10.20 per 100 pounds, net, packed, c.i.f. Philadelphia, Pennsylvania, U.S.A. Entry was made at the stated dollar price, net, packed, less charges on the entire shipment for consular fee, forwarding and lading, inland freight, marine and war risk insurance and ocean freight. Appraisement was at the same dollar price, net, packed, less *all* deductions made on entry, except the item of $146.32 for inland freight. Thus, the only question at issue in the *Steer* case was *inland* freight and not lading or loading charges which loading charges *are* in issue herein, but were *not* contested in the *Steer* case. By the appraisement, the Government conceded *for that case* that lading charges were not dutiable.

Inland freight charges have been the subject of decision in numerous cases and the views of the court may be considered in reference to their applicability to the instant loading charges. In *United States* v. *Heffernan Paper Co.*, 13 CCPA 593, T.D. 41454, the price for goods was the same delivered in Berlin, Hamburg, or Wismar. The court held that the inland freight was part of the market value of the goods and dutiable. The court pointed out, at page 596, that, if inland freight were allowed, the importer would be given a value for his goods which

is less than the price at which they can be bought on the open market in Berlin and that Congress had no such result in mind in enacting foreign value, subsection (b) of section 402 of the Tariff Act of 1922. That decision was followed or approved in *United States* v. *Traders Paper Co. et al.*, 14 CCPA 293, T.D. 41909; *United States* v. *Zellerbach Paper Co. (Hoyt, Shepston & Sciaroni)*, 28 CCPA 303, C.A.D. 159; *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553; and *Albert Mottola, etc.* v. *United States*, 46 CCPA 17, C.A.D. 689. In those cases *only one price* existed for merchandise. There was no showing that merchandise could ever be purchased at invoice price less freight. In the case at bar, it is not disputed that the merchandise could be purchased *only at one price*, namely, a c.i.f. price which *included* the loading charges.

The court in *Kurt Orban Company, Inc.* v. *United States*, 52 CCPA 20, C.A.D. 851, referred to the above five cases as having a common factual situation, viz, there was one price, and only one price, for the merchandise which was on an f.o.b. port of shipment basis. This price always included the inland freight and f.o.b. charges. In the *Kurt Orban* case, as distinguished from the facts in the five cited cases, the court stated that "The important thing is that he [a witness] testified to having bought from SAPET principals on an f.o.b. factory basis * * * ." Such testimony is not available in the case at bar where only a c.i.f. price, which included the loading charges, was available to *all* purchasers for export to the United States.

In *Erb & Gray Scientific, Inc.* v. *United States*, 53 CCPA 46, C.A.D. 875, the court held under export value, section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, that a microscope which was appraised at $17,000, which included $3,500 designated on the commercial invoice as "New York Office Service and Operation Fee," was properly included in such appraised value. The $3,500 was an additional charge, above and beyond the seller's price at which it offered the involved instruments, paid by appellant to the New York office of the exporter's wholly owned subsidiary. That sum was paid as a contribution toward meeting the subsidiary's office expense for the manufacturer, which provided factory trained service engineers to install and service the microscopes with Erb & Gray paying their expenses. These services included, among other things, such items as repair and overhaul of the units, breakdown and other emergency service, training of operators, etc., including supervision of engineers from Japan, and rendering assistance to them, salaries of the exporter's New York office staff, rent, travel to and from Japan, and other miscellaneous direct and overhead expenses, within the United States. It is noticed that these are expenses, paid by Erb & Gray, for services in the United States *after* importation and after installation.

As such expenses are held to be subject to duty, it should follow that the loading charges, here involved, which are part of the *one price* for the goods, are likewise subject to duty as part and parcel of the purchase price. The fact that the Government in the case at bar has *not* elected to contest the ocean freight and insurance is of no legal consequence and does affect the issue of the loading charges.

The CCPA in its recent decision in *United States* v. *Getz Bros. & Co. et al.*, C.A. 5279, dated November 9, 1967, 55 CCPA 11, C.A.D. 927, stated "* * * that all mills sold their export plywood at an f.o.b. Japanese port price. The price included delivery to the exporting vessel." The trial court in that case, *Getz Bros. & Co. et al.* v. *United States*, 55 Cust. Ct. 693, 695, Reap. Dec. 11106 stated, "In all cases, whether the merchandise was purchased directly from the manufacturer or through a trading house, it was delivered f.o.b. port in Japan, ready for shipment." These statements support the view that the loading charges were included in the c.i.f. Norfolk cost.

This brings up the second question for consideration, namely, whether plaintiff is entitled to a deduction for cash discount of 5 percent. The three invoices in the case at bar do *not* show that plaintiff received or was to receive a 5 percent discount. Indeed, those invoices clearly show terms of 60 days, which of course means payment in 60 days *on credit terms*. Moreover, plaintiff's counsel stated to the court that plaintiff *never buys for cash but only on credit basis*.

As previously noted herein, the witness, Mrs. Seligman, only purchased from Heinola and, while she testified she received a 5 percent discount on sales to United States Plywood Corporation, the then current Finnish Association pricelist did *not* show that a 5 percent discount or any discount was allowed to *all* purchasers from Finnish exporters from list prices. She also testified that she had knowledge that *other* manufacturers of plywood in Finland sold for export to the United States during the involved period and that she did *not* purchase from them. There is no evidence that these manufacturers allowed any discount.

Since plaintiff failed to offer any evidence to refute the allegations contained in defendant's exhibit AA, the court is justified in assuming that plaintiff admits the accuracy of the statements contained in that exhibit. A study of the Government report, exhibit AA, with the attached affidavit, shows clearly that no 5 percent discount for cash was allowed to United States purchasers. There is also a failure of proof as to whether other manufacturers of birch plywood in Finland freely offered their plywood to all United States purchasers during the involved period at the association pricelist, less 5 percent discount. Faced with these facts, the court has no alternative except to find that the plaintiff has not made out a *prima facie* case in support of its claimed allowance of 5 percent discount.

The court, therefore, makes the following findings of fact on the record herein:

1. The imported merchandise, here involved, consists of birch plywood of differing thicknesses and sizes, which was exported from Hanko, Finland, on June 24, 1965, by the producer Oy Wilh. Schauman Ab.

2. Birch plywood appears on the final list published in 93 Treas. Dec. 14, T.D. 54521, and must be valued on the basis of value as defined in section 402a of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

3. The imported merchandise was appraised on the basis of export value as defined in section 402a(d) of the Tariff Act of 1930, as renumbered in the above simplification act, at the invoiced unit values, net, less ocean freight and insurance, while importer claims the same basis for appraisement at the invoiced unit values, less loading charges, and less ocean freight and insurance, as well as a 5 percent cash discount.

4. That, at the time of exportation, such as or similar birch plywood to that here involved was not freely offered for sale in Finland for home consumption.

5. That, at the time of exportation, merchandise such as that here involved was not freely offered for sale by the exporter herein to all purchasers but under an exclusive agreement was sold only to plaintiff and other companies which had the same president. It was offered on a c.i.f. basis which included the price for the merchandise, packing, inland freight, loading charges, ocean freight and insurance.

6. That, at the time of exportation, merchandise such as and similar to that here involved was freely offered for sale by Finnish manufacturers, other than the exporter herein, to all purchasers in the principal markets of Finland, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States exclusively at unit c.i.f. prices.

7. The record fails to show whether the merchandise referred to in finding No. 5 was freely offered for sale at prices in the uniform pricelist of the Finnish Plywood Mills Association, less loading charges and less 5 percent discount to all United States purchasers.

On the record, the court makes the following conclusions of law:

1. The imported merchandise is properly subject to duty on the basis of export value as defined in section 402a(d) of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

2. Plaintiff has failed to establish by competent and satisfactory evidence that the invoiced unit values, less loading charges, and less a 5 percent discount are the prices at which such or similar merchan-

dise was freely offered for sale under the statute here considered and, therefore, has failed to make a *prima facie* case.

3. The appraised values on the basis of export value, as defined and renumbered, *supra*, which are presumptively correct, have not been overcome and remain in full force and effect. 28 U.S.C., section 2633. *I. Arditi* v. *United States*, 50 CCPA 49, 51, C.A.D. 818; *Kobe Import Co.* v. *United States*, 42 CCPA 194, 198, C.A.D. 593.

Judgment will be entered accordingly.