(Reap. Dec. 9006)

INTERNATIONAL HAT COMPANY *v.* UNITED STATES

Entry No. 531.

(Decided October 15, 1957)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

JOHNSON, Judge: This is an appeal for reappraisement of palm leaf hat bodies imported from Mexico on August 31, 1951. The merchandise was entered at the invoice unit values in Mexican currency, plus 1.8 per centum tax, plus charges for packing, trimming,

and measuring, and was appraised at the invoice unit values, plus 8 per centum and 2½ per centum, plus the cost of packing, trimming, and measuring, as invoiced.

At the trial, counsel for the respective parties entered into the following stipulation:

MR. TOMPKINS: * * *

* * * * * * *

I offer to stipulate: 1, neither such nor similar merchandise was freely sold or offered for sale in Mexico on or about the date of exportation from Mexcio at prices higher than the per se unit invoice prices as specified in the invoice before the court, plus a 2½ per cent tax (a tax of only 1.8 per cent was included in the entered values), plus the cost of packing, trimming and measuring, as invoiced. "Foreign values" do not apply to these shipments.

MR. O'NEILL: The Government so agrees.

MR. TOMPKINS: I further offer to stipulate, 2: similar merchandise was not freely sold or offered for sale in Mexico for exportation to the United States on or about the date of exportation from Mexico at prices higher than the per se unit invoice prices as specified in the invoice before the court, plus a 2½ per cent tax, plus the cost of packing, trimming and measuring, as invoiced. "Export values" for *similar* merchandise do not apply to these shipments.

MR. O'NEILL: The Government so agrees.

MR. TOMPKINS: I further offer to stipulate: 3, The issue is confined to the question of whether an 8 per cent commission paid by the United States importer to Fortoul y Herrero, the Mexican shipper, in addition to the per se unit prices as set forth in the invoices before the court, which commission was not included in the entered values, but was included in the appraised values, should be included as a part of the dutiable values. No question is raised by either plaintiff or defendant about the validity of the per se unit invoice prices as set forth in the invoice before the court as representing the basis for an "export value" for such merchandise (to which defendant claims and plaintiff denies that said 8 per cent commission should be added), nor about the charges for packing, trimming or measuring, and taxes of 2½ per cent as included in the appraised values.

MR. O'NEILL: The Government so agrees.

MR. TOMPKINS: I further offer to stipulate that the details relating to the invoice prices before the court are as follows: "Item" is the heading of one column, and the other column is headed "Invoice prices Mexican pesos per gross".

96 gross Anisero 11/12, price 55.

Item 128 gross Charrito Blanco, price 48.

53 gross Tlaxiaco Comun, 56.415.

Next item, 34 gross Palmilla 2a, price 93.44.

Next item, 20 gross Charrito Pinto, and the price is 48.

MR. O'NEILL: So agreed.

There was then received in evidence, as defendant's collective exhibit A, a report of Treasury Representative J. Eugene Cauchon, dated July 23, 1951, and it was conceded by plaintiff's counsel that the report described the conditions existing when the within merchandise was exported from Mexico, except for adjustments in prices.

According to the report, the firm of Fortoul y Herrero, S. de R. L. (hereinafter called Fortoul y Herrero), is a purchasing agent on a commission basis for the importer, as well as for a few other principals, and buys and sells for its own account only in the home market and not for export. It does not sell merchandise such as that involved herein in the home market, nor does it handle such merchandise as commission agent for any principal in Mexico. Such merchandise is purchased from itinerant merchants ("ambulantes"), who make the rounds of the Indian villages and buy hats from homeworkers. The "ambulantes" offer and sell the hats 2 days a week at the Tehuacan hat market. All purchasers may buy directly, without the intervention of a commissionaire and without the payment of a commission. The merchandise shipped to the United States by Fortoul y Herrero is invoiced at the prices paid to the itinerant merchants. The buying commission of 8 per centum is charged extra.

In addition to serving as agent for the plaintiff herein, Fortoul y Herrero acted in a similar capacity for Mexican American Hat Co. A copy of the agreement between those two companies is attached to the Treasury representative's report and marked "Exhibit No. 1."

Frank Pellegrino, president of the plaintiff company, testified that, in 1951, he was vice president and general manager of the company and that he was familiar with the agreement entered into between the company and Fortoul y Herrero in 1949, which was still in effect in 1951.

This agreement, consisting of two letters, was received in evidence, together with translations thereof (plaintiff's collective exhibit 1, exhibits 1-A and 1-B). It provides for the purchase of palm hats on commission by Fortoul y Herrero for the account of and in accordance with orders given by the plaintiff. It also provides that the commissionaire shall give weekly accounts of market prices and conditions, purchases made, stocks in warehouse, quantities shipped, and funds received and invested. The agreement sets forth in detail the method of packing, marking, shipping, and selecting the hats to be followed by the agent. A commission of 8 per centum was to be credited to the agent on the value of the hats alone, exclusive of other charges.

Mr. Pellegrino testified that, under this agreement, his company would send orders to Fortoul y Herrero for the purchase of the various types of hats desired, the price being left to the agent's discretion. Before shipment, the excessive straw in the hat crowns was clipped or trimmed, and the hats were sorted into stacks of small, medium, and large, to enable them to nest closer together. Hats that were water damaged or had holes were removed and sold back on the market, any loss being borne by the plaintiff. Where hats were lost or destroyed while in the possession of Fortoul y Herrero or where orders were canceled by plaintiff, plaintiff's account was charged for the loss.

Frank Ostolaza, president of Mexican American Hat Co., testified that exhibit 1, attached to defendant's collective exhibit A, was an agreement entered into between his company and Fortoul y Herrero in effect in 1951; and that any merchandise bought by Fortoul y Herrero in preparation for shipment had to be covered by insurance by the Mexican American Hat Co., because it was considered the latter's property.

In accordance with the stipulation quoted above, the sole issue before me is whether the 8 per centum commission paid to Fortoul y Herrero is part of the dutiable value of the merchandise.

It is well settled that a commission charged for the purchasing or handling of merchandise for a principal is not a proper part of dutiable value. *United States* v. *S. S. Kresge Co. et al.*, 26 C. C. P. A. (Customs) 349, C. A. D. 39; *United States* v. *Alfred Kohlberg, Inc.*, 27 C. C. P. A. (Customs) 223, C. A. D. 88; *United States* v. *Nelson Bead Co.*, 42 C. C. P. A. (Customs) 175, C. A. D. 590. Furthermore, it has been held that, where the purchaser may buy directly without the intervention of an agent and without the payment of a commission, the commission is not a part of the value of the merchandise. *United States* v. *Enrique Vidal Sanchez*, 15 Ct. Cust. Appls. 443, T. D. 42642; *United States* v. *Wool Novelty Co., Inc.*, 23 Cust. Ct. 268, Reap. Dec. 7731.

It is clear from the record presented that the 8 per centum commission here in question was paid to Fortoul y Herrero for the purchasing and handling of merchandise for plaintiff's account and that plaintiff could have bought without the intervention of an agent and without the payment of a commission. The commission is a buying commission and is not a part of the dutiable value of the merchandise.

I find as facts:

1. That the merchandise involved in this case consists of palm leaf hat bodies imported from Mexico on August 31, 1951.

2. That, in the purchase of this merchandise, the importer employed an agent in Mexico, the firm of Fortoul y Herrero, S. de R. L., which purchased, handled, and shipped the hat bodies for plaintiff's account.

3. That, for the services rendered, Fortoul y Herrero was paid a commission of 8 per centum on the value of the hats alone.

4. That the plaintiff could have purchased the merchandise directly, without the intervention of an agent and without the payment of a commission.

5. That the price at which this merchandise was freely offered for sale to all purchasers in the principal market of Mexico, in the usual wholesale quantity in the ordinary course of trade, is the unit invoice values (set forth in the stipulation of counsel), plus 2½ per

centum tax, plus the cost of packing, trimming, and measuring, as invoiced.

I conclude as matters of law:

1. That the item of 8 per centum commission paid to Fortoul y Herrero was a buying commission and forms no part of the value of the merchandise.

2. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the instant merchandise.

3. That such values are the invoice unit values (set forth in the stipulation of counsel), plus 2½ per centum tax, plus the cost of packing, trimming, and measuring, as invoiced.

Judgment will be rendered accordingly.