<hr/>

(Reap. Dec. 10863)

PLYWOOD & DOOR NORTHERN CORPORATION *v.* UNITED STATES

Entry No. 720131.

(Decided November 23, 1964)

*Richard Van Steenburgh* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

WILSON, Judge: This is an appeal for reappraisement of the value of certain birch plywood, exported from Finland in the month of July 1960. The merchandise was appraised on the basis of export value, as defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The manufacturer and shipper of the involved merchandise was A. Ahlstrom Osakeyhtio which will be hereinafter designated as "Ahlstrom."

There is no dispute but that export value is the proper basis of appraisement. Plaintiff contends, however, that the invoice units, less ocean freight, loading charges, and insurance correctly represent such export value. The Government concedes that the ocean freight, loading charges, and insurance charge are nondutiable items but contends that a 3 per centum commission, not shown on the invoice, represents a "selling" commission and, as such, is properly part of the dutiable export value of the involved merchandise. This 3 per centum so-called commission or service charge was made by Plywood & Door Manufacturers Corporation to the importer, Plywood & Door Northern Corporation. The plaintiff herein, in this connection, contends that this commission or service charge was a "buying" commission for services rendered on behalf of the importer in buying the merchandise and that, as such, is a nondutiable item.

One witness testified on behalf of the plaintiff. In addition, plaintiff introduced and there were received in evidence four affidavits relative to sales of merchandise such as is here involved both for home consumption in Finland and for export to the United States and other countries. Plaintiff's exhibit 1 is an affidavit of Leo Levon who handled sales of plywood for the manufacturer herein, wherein affiant recites that he is familiar with the trade practices and customs prevailing in the plywood business in Finland, which affidavit provides data as to the sales practice of the manufacturer herein, specifically with respect to the sale of the merchandise here under consideration. Clarification of certain statements made by the affiant in plaintiff's exhibit 1 was made in plaintiff's exhibit 4. Plaintiff's exhibit 2 is an affidavit of Mr. B. Sallmen, sales manager for Savo Oy, Helsinki, Finland, manufacturer of birch plywood and hardboard. Reference is therein made to a standard pricelist adopted by the Finnish Plywood Mills Association on or about February 17, 1960, for birch plywood manufactured in Finland for export to the United States, to which affidavit is attached a copy of a pricelist, designated as

exhibit "A" and called "Amply," covering birch plywood in the various grades and sizes shown on the attached pricelist which "has been freely offered by Savo for export to the United States pursuant to the prices shown on Exhibit 'A' effective from February 17, 1960 down to the time of this affidavit" (March 9, 1962). The affiant, in plaintiff's exhibit 2, recites further that his firm freely offered birch plywood for sale in Finland for exportation to the United States. Plaintiff's exhibit 3 (R. 70) is an affidavit of Mr. Kurt Palander, a director of Ahlstrom, who states that, on and after March 1, 1958, birch plywood was exported by his company to the United States under the terms of an exclusive agreement with four United States importers.

Defendant's exhibit A is a letter from the Plywood & Door Manufacturers Corporation to the United States customs examiner of the involved merchandise, reciting that the said corporation acts as exclusive agent in the United States for certain Finnish plywood manufacturers, and indicating trade practices in the sale of the commodity. It is further stated in said letter that Plywood & Door Manufacturers Corporation renders certain services in the sale of Finnish plywood. Defendant's exhibit B is a report by a United States Treasury representative, dated June 4, 1957, relative to an investigation with respect to prices, restrictions, trade discounts, and other pertinent data in sales of plywood by a manufacturer, Enso-Gutzeit Osakeyhtio, Saynatsalo, Finland. Such exhibits as are above referred to will be further discussed as is deemed pertinent in our present determination.

Plaintiff called as its witness Mr. Gunnar Rudback who stated that he was president of Plywood & Door Manufacturers Corporation, Plywood & Door Northern Corporation, the plaintiff herein, Plywood & Door Midwest Corporation, Plywood & Door Western Corporation, and Plywood & Door Southern Corporation (R. 13–25). He testified that Plywood & Door Northern Corporation imported the merchandise under consideration and that the purchase was in accordance with a so-called "Amply" pricelist used by manufacturers in Finland as a basis for their list prices (R. 13–15) which pricelist plaintiff maintains did not contain a so-called agent's commission. The witness further testified that Plywood & Door Manufacturers Corporation had billed Plywood & Door Northern Corporation, the plaintiff herein, 3 per centum of the invoice value of the merchandise for certain services claimed to have been rendered to the plaintiff in the purchase of the involved merchandise; that among the services performed by Plywood & Door Manufacturers Corporation for which it made the 3 per centum charge was the promoting of the use of Finnish plywood through advertising, servicing complaints of customers, giving expert advice on problems involving plywood, loaning money for the payment

of duty, and loaning money for the payment of the purchase price of imported merchandise (R. 18–20).

On cross-examination, Mr. Rudback testified that Plywood & Door Manufacturers Corporation was at one time owned by a Finnish citizen and that, subsequently, the stock owned by the Finnish individual was transferred to a holding company (R. 22–23). The witness then stated that Ahlstrom does not have an interest in Plywood & Door Manufacturers Corporation (R. 27); that the latter corporation is now owned by a holding company (R. 28, R. 41), but that he did not know whether any of certain eight manufacturers in Finland had an interest in Plywood & Door Manufacturers Corporation or in any of the other four corporations of which he was president (R. 29). Plaintiff, on redirect examination, brought out that Plywood & Door Northern Corporation, together with three other companies heretofore mentioned, is owned by a holding company known as Interply Company Establishment, incorporated under the laws of Liechtenstein in Europe (R. 40–41).

Describing the method of placing orders for merchandise, such as here imported, Mr. Rudback testified that Plywood & Door Northern Corporation, for instance, would inform Plywood & Door Manufacturers Corporation about it, and the latter company would then submit the order, in the form of an inquiry to all of the eight manufacturing companies (mentioned in defendant's exhibit A) located in Finland (R. 30). "When a reply is received from Finland from the mill, the order is placed with the mill which can give the best price." Subsequently, plaintiff's witness explained that, instead of the expression "best price," he had intended to say "best delivery" (R. 65–66). When Plywood & Door Manufacturers Corporation receives word from Finland as to which mill can take the order, then Plywood & Door Manufacturers sends Northern a copy of the order placed with the Finnish mill (R. 32). The merchandise is then billed to Plywood & Door Northern Corporation and, when shipment is made, the documents are sent to Plywood & Door Manufacturers Corporation, which, in turn, sends them to the customs broker with a check for the duty and also pays the customs broker (R. 31). On redirect examination, Mr. Rudback testified that Plywood & Door Manufacturers Corporation was not paid by these mills (R. 34) and that it does not have a contract of any kind with the eight manufacturers or any of them (R. 41). The record shows that the witness subsequently stated with respect to the eight Finnish manufacturers that "We also represented the people over there" (R. 42). Subsequently, Mr. Rudback testified that, instead of the latter language, it should read to the effect that the Finnish manufacturers were "present" over there (R. 68).

The issue in this appeal, as stated by the parties to this controversy, is whether the 3 per centum so-called service charge made by Plywood & Door Manufacturers Corporation to Plywood & Door Northern Corporation, the plaintiff herein, is properly a part of the dutiable value of the involved merchandise. Defendant's exhibit A, in explanation of the operations of Plywood & Door Manufacturers Corporation, recites in part as follows:

1. Plywood & Door Manufacturers Corporation acts as exclusive agent in USA for the following Finnish plywood manufacturers:
   A. Ahlstrom Osakeyhtio, Helsinki
      Enso-Gutzeit Oy, Parviainen Mills, Saynatsalo
      Fennia Faneriosakeyhtio, Lahti
      Kalso Oy, Vuohijarvi
      Oy Kaukas Ab, Helsinki
      Rauma-Repola Oy, Suolahti Mills, Suolahti
      Oy Wilh, Schauman Ab, Jyvaskyla
      Viiala Oy, Viiala

\*          \*          \*          \*          \*          \*          \*

For these services Plywood & Door Mfrs Corp charges the importers a purchasing commission which can vary from 3–5% depending upon the extent of financing needed. This purchasing commission is a compensation for expenses like—postage, telegrams and traveling which the importers would have if they dealt directly with the foreign shippers. It also covers the expense a bank would charge for a Letter of Credit or what a factor would charge for financing the import. In addition the importers get assistance from Plywood & Door Mfrs in case of complaints.

Importers who do not want to avail themselves of the on-the-spot services offered by Plywood & Door Mfrs Corp can buy Finnish plywood from five manufacturers not represented by Plywood & Door Mfrs Corp. These are:

   Ab Faner Oy, Hame Faneritehdas,
   Savo Oy, H. Saastamoinen and Heinolan Faneritehdas.

The first mentioned company seems however to have an exclusive arrangement with one American importer. These mills are so far as we know following the basic prices as per the Amply list but it is likely that they at least in some instances have granted the American importers discounts or commission.

\*          \*          \*          \*          \*          \*          \*

In my opinion, the preponderance of evidence in this case sustains a finding that the 3 per centum so-called commission here in issue is not properly a part of the dutiable value of the imported merchandise. The plaintiff contends that this charge imposed by Plywood & Door Manufacturers Corporation was one imposed by said corporation for certain services rendered the importer, in effect, that it was a buying commission and, as such, was not a part of the value of the imported merchandise. The Government, contending that Plywood & Door Manufacturers Corporation acted in the pertinent transaction as an agent for the manufacturer, maintains that the charge in question was accordingly a part of the value of the merchandise here imported. A

fair interpretation of the record in this case lends support, in my opinion, to a conclusion that Plywood & Door Manufacturers Corporation acted as exclusive agent for the manufacturer and shipper of the merchandise in question and that this 3 per centum service charge would ordinarily be a part of the value of "such" merchandise as was sold to the importer by the particular manufacturer, Ahlstrom. However, in the determination of the proper value of the imported merchandise, it is necessary to decide whether or not the sale by Ahlstrom of the imported merchandise satisfied the statutory requirements in ascertaining the proper export value, admittedly the proper basis of value. The record in this case shows that Ahlstrom, pursuant to an agreement with certain United States importers, confined its sales of birch plywood to five United States importers, of which the plaintiff herein, Plywood & Door Northern Corporation was one (plaintiff's exhibit 1). A memorandum of the exclusive agreement, effective March 1, 1958, in which Ahlstrom limited its export sales to five United States importers is annexed as part of plaintiff's exhibit 3, *supra*. This restriction on sales made by the manufacturer, Ahlstrom, precludes, in my opinion, a finding of export value for the merchandise here sold by Ahlstrom to the importer, Plywood & Door Manufacturers Corporation since "such" merchandise was not freely offered to all purchasers in the ordinary course of trade.

In *United States* v. *Plywood & Door Manufacturers Corporation*, 46 Cust. Ct. 797, A.R.D. 133, the court, at page 802, stated:

> The record, however, does establish that there existed between the exporter and the importer herein an exclusive agreement for the purchase of said merchandise. The affidavit, plaintiff's exhibit 4, also establishes that the so-called "bedrails" were sold exclusively to the importer herein. Accordingly, there being a restriction as to such merchandise in both the "panel" and "bedrail" cases, such merchandise was not freely offered for sale for export to the United States. We are of the opinion, however, that the record does establish that other manufacturers of similar merchandise did freely offer their merchandise for sale for export to the United States, based upon the "AMFIN" pricelist.

Accordingly, I am of opinion that the situation in the case at bar parallels that which obtained in the *Plywood & Door Manufacturers Corporation*, case, *supra*, calling for a like conclusion as there made by the court. Irrespective of whether or not the so-called 3 per centum commission was or was not a part of the value of the merchandise here sold by Ahlstrom, "such" sale did not accord with a free offering of the merchandise, and, accordingly, export value for "such" merchandise cannot be sustained. The presumption of correctness attaching to the appraiser's finding that there was an "export" value for "such" merchandise has been overcome.

The record in this case, however, does establish that other manufacturers in the country of exportation freely offered birch plywood

for export to the United States and had done so since February 17, 1960, pursuant to a pricelist adopted by the Finnish Plywood Mills Association. Such pricelist was identified by the code word "Amply" (plaintiff's exhibit 2). The law is well settled that if there be no "such merchandise," but "similar" merchandise is freely offered for sale, then the value of the "similar" merchandise may be taken as the value of the imported goods. *Pan-American Plywood Co.* v. *United States*, 43 Cust. Ct. 614, A.R.D. 112. The aforesaid affidavit (plaintiff's exhibit 2) discloses that birch plywood was offered and sold for exportation to the United States by the Finnish manufacturer, Savo, at prices pursuant to the so-called "Amply" pricelist, with no agent's commission applicable in connection with such sales. The invoices annexed to plaintiff's exhibit 2 show that Savo had sold birch plywood without a commission. Further, defendant's exhibit A also states that importers "who do not want to avail themselves of the on-the-spot services offered by the Plywood & Door Mfrs Corp" can buy Finnish plywood from five manufacturers not represented by Plywood & Door Manufacturers Corporation, among which is the Savo Oy company. The evidence introduced, in this connection, on the part of the plaintiff has not been overcome or contradicted by any substantial evidence presented on the part of the defendant. Accordingly, as heretofore indicated, the presumption of correctness attaching to the appraiser's finding of value with respect to the instant merchandise has been overcome and the plaintiff on its part has established a value for "similar" merchandise. The courts have held that where it can be shown that the intervention of an agent is not required for the purchase of merchandise and that any United States importer could have purchased the merchandise directly without payment of a commission, in that case, the amount so paid is not a part of the dutiable value. *United States* v. *Wool Novelty Co., Inc.*, 23 Cust. Ct. 268, Reap. Dec. 7731; *International Hat Company* v. *United States*, 39 Cust. Ct. 669, Reap. Dec. 9006.

On the basis of the record here presented, I find as facts:

1. That the involved merchandise consists of birch plywood, exported from Finland on or about July 6, 1960.

2. That the merchandise here involved is enumerated in the final list published in T.D. 54521 and is, therefore, subject to appraisement under section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That, at the time of the exportation of the merchandise in question, merchandise such or similar to that herein involved was not freely offered for sale in Finland for home consumption.

4. That, at the time of exportation, the exporter restricted its sales to certain purchasers in the United States and that said merchandise

was not freely offered for sale to all purchasers in the principal markets of Finland, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

5. That, on the record presented herein, the plaintiff has overcome the presumption of correctness attaching to the appraiser's finding of value.

6. That, at the time of exportation, merchandise similar to that here involved was freely offered for sale to all purchasers in the principal markets of Finland, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States by the Finnish manufacturer, Savo Oy.

7. That, with respect to the birch plywood in question, the market value or price at which similar merchandise was so offered for sale, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the prices set forth in column 4 listed below for the merchandise therein described, less the prorated amounts of the nondutiable charges below indicated.

| 1 | 2 | 3 | 4 |
| --- | --- | --- | --- |
| Grade | Thickness | Size | Price per M. square foot |
| BJ/BB | 3⁄16″ | 72″ x 50″ | $98.75 |
| | | 62″ x 62″⎫ 60″ x 60″⎭ | 88.75 |

Nondutiable charges:

| | |
| --- | --- |
| Loading charges at port of shipment | $6. 23 |
| Ocean freight | 91. 75 |
| Insurance | 4. 74 |

I conclude as matters of law:

1. That export value, as that value is defined in section 402a (d), as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here involved, and

2. That such values were the invoice unit values, less the prorated portions of the loading charges at port of shipment and less ocean freight and insurance.

Judgment will issue accordingly.